PENN-FLORIDA HOTELS CORPORATION v. THE ATLANTIC NATIONAL BANK OF JACKSONVILLE, as Trustee, *et al.*

THE ATLANTIC NATIONAL BANK OF JACKSONVILLE, as Trustee, v. PENN-FLORIDA HOTELS CORPORATION, *et al.*

COLONIAL ENTERPRISES, INC., and VENETIAN ENTERPRISES, INC., and COLONIAL TOWERS, INC., v. THE ATLANTIC NATIONAL BANK OF JACKSONVILLE, as Trustee, *et al.*

Three Appeals.

170 So. 877.
Opinion Filed November 30, 1936.

*Loftin, Stokes & Calkins, Carl T. Hoffman* and *L. L. Robinson,* for Appellants;

*Knight, Adair, Cooper & Osborne, H. L. Peterson* and *H. W. Holland,* for Appellees.

DAVIS, J.—These suits were instituted on March 7, 1932, and Receivers were appointed in all three cases. Involved in the litigation were three mortgaged hotels, Miami Colonial, Colonial Towers and Venetian, subject to an aggregate bonded indebtedness of $1,000,000.00 and appraised at approximately $600,000.00 in aggregate value. The Receivers continued to operate the hotels with a resultant profit of approximately $40,000.00 for the time beginning

with their appointment on March 7, 1932, and extending until October 1, 1934, a period of more than two and one-half years. The suits were brought by Atlantic National Bank of Jacksonville, as Trustee, to foreclose three separate trust indentures executed by the appellant, Penn-Florida Hotels Corporation, encumbering the hotels hereinbefore named.

On October 1, 1934, pursuant to a petition for reorganization of the debtor corporation filed under Section 77-B of the U. S. Bankruptcy Act, as amended (Section 207, Title II U. S. C. A. 48 Stat. 912, H R 5884 of the 73rd Congress approved June 7, 1934) the U. S. District Court of the Southern District of Florida appointed permanent Trustees for the debtor corporation, Penn-Florida Hotels Corporation, its properties, business, assets and affairs and in and by its order approving the petition for reorganization aforesaid, and appointing said permanent trustees, the Federal Court enjoined and restrained all creditors of the debtor, including the plaintiff trustee, Atlantic National Bank of Jacksonville, from instituting or prosecuting any actions at law, or in equity, against said debtor corporation, without leave of the said U. S. District Court.

The several appeals herein are from portions of an order of the Circuit Court of Dade County entered April 18, 1935, wherein and whereby the State court, after reference to a Master, made allowances of certain fees to H. W. Holland, Esq., as solicitor for the Receivers: The Atlantic National Bank of Jacksonville, as Trustee; Leslie Buswell and Roland A. Mumford, as Receivers, and Knight, Adair, Cooper and Osborne as solicitors for the plaintiff below. A cross-appeal by the Atlantic National Bank of Jacksonville challenges as inadequate that portion of the decree of April 18, 1935, fixing the amount of its compensation for

the services rendered by it as Trustee under the trust indentures sued upon in the instant causes.

The decree appealed from fixed the fees and compensation objected to in the following amounts:

To H. W. Holland as Attorney for the Receivers:

Miami Colonial Hotel foreclosure ........$ 4,618.30.
Venetian Hotel foreclosure ..................... 1,920.64.
Colonial Towers foreclosure .................. 3,461.06.

Total allowed ......................................$10,000.00

To Plaintiff's solicitors, Knight, Adair, Cooper and Osborne for services rendered in instituting and prosecuting the suits:

Miami Colonial Hotel foreclosure ........$ 7,820.00
Venetian Hotel foreclosure ..................... 4,080.00
Colonial Towers foreclosure .................. 5,100.00

Total allowed ......................................$17,000.00

To the plaintiff, Atlantic National Bank of Jacksonville, as Trustee:

Miami Colonial Hotel foreclosure ........$ 2,500.00
Venetian Hotel foreclosure ..................... 1,150.00
Colonial Towers foreclosure .................. .750.00

Total allowed ......................................$ 4,400.00

In view of the status of the case as affected by the reorganization proceedings in the Federal Court, we think it unimportant to decide at this time any questions except that of whether or not the amounts fixed and allowed by the State court to the State court receivers, to the counsel

for the State court receivers and to the plaintiff-trustee for its attorneys are allowable at this stage of the proceedings, and if so, whether same are reasonable as fees and compensation for their services in the State court foreclosure suits. The other questions argued, but not decided, will be reserved for future decision, should such decision be found to be necessary because of a failure of the Federal Court reorganization plans.

It is first contended that in view of the filing of proceeding in the Federal Court the State court lost jurisdiction to make any allowance for the fees in question, of the attorneys and receivers, and that even if the State court retained jurisdiction to make such allowance, that no allowance was proper to be made by the State court unless and until the case reached the point of final decree of foreclosure and sale.

The trust indentures specifically provided that the trustee-plaintiff should be entitled to reasonable compensation for all services rendered by it in the execution of the trust created, and that it should be reimbursed for all reasonable costs and expenses incurred by it for attorney's fees and otherwise, in the protection and enforcement of the trust indentures. Such compensation and expenses of the trustee were expressly made an obligation of the mortgagor, Penn-Florida Hotels Corporation, to pay, and were, in addition, expressly made liens upon the properties mortgaged by the trust indentures.

While ordinarily the question of allowance of a solicitor's fee to complainant in a foreclosure case should remain for decision on final submission of the cause, and then be allowed only in the event a decree of foreclosure is granted (Winner, Klein & Co. v. First National Bank, 222 Ala. 57, 130 Sou. Rep. 900), yet the effect of the Federal pro-

ceedings instituted in a case like the present is such as to arrest the foreclosure proceedings in the State Court and thereby make the obtaining of a final decree of foreclosure from the State court impossible, unless the Federal proceedings for reorganization under Section 77-B of the Bankruptcy Act shall have failed and, in consequence, the proceedings in the Federal Court be dissolved.

Sub-paragraph (1) of Section 77-B of the U. S. Bankruptcy Act (as amended)—11 U. S. C. A. par. 207 (1)—provides that the obligations incurred by the original receiver or prior trustee of the bankrupt estate, as well as the reasonable administrative expenses and allowances of the prior proceeding, as fixed by the court of first instance appointing the prior receiver or trustee, shall be affirmatively protected by the Federal Court after the possession and title to the debtors property shall have become vested in the bankruptcy trustee appointed under the above section. The effect of the Bankruptcy Act, as now amended by Congress, is to modify the rule of the prior Federal cases, and to preserve the prior receivership jurisdiction's power to fix the allowances by removing from the bankruptcy court the sole power to fix such compensation and fees that formerly belonged to the bankruptcy courts prior to the amended Act of Congress above cited. *In re* New York Investors, 79 Fed. (2nd) 182; *In re* National Department Stores, Inc., 11 Fed. Sup. 101; *In re* 211 East Delaware Place Bldg. Corp. 7 Fed. 892. We hold that the State court retained its authority to act in fixing the allowances complained of, notwithstanding the Federal proceedings.

As to the reasonableness of the allowances themselves, we fail to find any sufficient basis in the record to impel a

reversal of the Chancellor's findings and decrees as to any of them.

The American Bar Association, whose Canons of Professional Ethics have been looked to by the Supreme Court of Michigan for guidance in matters of allowances for attorneys' fees in at least one case—McGraw v. Township of Lake, 266 Mich. 38, 253 N. W. Rep. 207—holds, in line with the trend of our own decisions on the subject, that in determining the amount of an attorney's fee, it is proper to consider: "(1) The time and labor required, the novelty and difficulty of questions involved, and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations is in itself controlling. They are mere guides in ascertaining the real value of the services." See Canon 12.

In Wood on "Fee Contracts of Lawyers," at pages 78-81, it is said in elaboration of the foregoing that:

"Labor, like time is a fundamental factor of value. But only the labor necessarily involved is considered * * * Regard is to be had, however, to both physical and mental labor * * * Not all labor entitled to compensation appears in the record, for it may consist of consultation, advice, in-

vestigation and determination * * * Labor and time devoted to research, preparation and the drawing of instruments should be taken into consideration in fixing the value of legal services, and so should the time occupied in necessary travel. Finding precedents is necessary but relatively unimportant work * * * The real work of the lawyer begins when the precedents have been found, analysis of the decided cases, penetration of those cases to find the principles which underlie them, reasoning as to the right application of principle to facts, therein lies the real task of the lawyer, a task which demands for its best performance the highest powers of the human mind. Where one hundred can find the precedents, one may be discovered who can use them perfectly. There was only one Michelangelo, but there were thousands who could carry to him the chisels that he required or the brushes that he needed." (Citing Irwin v. Sweeney, 45 Fed. [2nd] 890.)

In the present case there was no testimony offered by the defendants, or by any of them, or by any intervenor, as to any contrary amount that might be reasonable for the several allowances required to be made, and, consequently the court below was left to act entirely upon the positive testimony that was offered in support of the conclusions of the Master, whose recommendation for higher amounts of compensation was, in some instances, scaled down by the Chancellor after considering the exceptions to the Master's several reports. In support of the allowances for attorney's fees decided there was positive testimony that more than 800 working hours, in addition to extra hours of traveling in connection with the controversy both before and after institution of suits, were expended by the law firm of Knight, Adair, Cooper & Osborne, in and about the foreclosure proceedings. The receivers served as such for more

than two years and the counsel for receivers was more or less wholly engaged in services in connection with their representation, during that period of time.

We think that a consideration of the record, especially in view of the fact that no countervailing testimony was adduced to rebut the evidence in the affirmative offered to support the claims for compensation interposed, requires an affirmance of the allowances of compensation to the receivers and their counsel, as well as the allowance of compensation to the counsel for the plaintiff, on the authority of what has heretofore been said, in addition to the following cases heretofore decided by this Court on that subject: Merrell v. Ridgely, 62 Fla. 546, 57 Sou. Rep. 352; National Union Fire Ins. Co. v. Cone, 80 Fla. 265, 85 Sou. Rep. 913; Evors v. Bryan, 77 Fla. 399, 81 Sou. Rep. 513; Flournoy v. Smith, 84 Fla. 553; 94 Sou. Rep. 503; Southern Bank & Trust Co. v. Mathers, 90 Fla. 542, 106 Sou. Rep. 402, Munroe v. Birdsey, 102 Fla. 544, 136 Sou. Rep. 886; Joudon v. Equitable Life Assurance Society, 102 Fla. 782, 136 Sou. Rep. 517; Hagan v. Neeb, 105 Fla. 297, 140 Sou. Rep. 916; Williams v. Dunn, 105 Fla. 327, 141 Sou. Rep. 190; Porter Interests v. Missouri State Life Ins. Co., 105 Fla. 550, 141 Sou. Rep. 741; Brush v. Barnett Natl. Bank, 110 Fla. 459, 140 Sou. Rep. 57; Ceraola v. Smith, 112 Fla. 399, 150 Sou. Rep. 611.

The allowance of compensation to the Atlantic National Bank of Jacksonville for its services as trustee have not been shown to be so unreasonably low as to warrant a reversal on its cross-appeal.

So the orders appealed from, in, so far as they have been discussed and dealt with in and by this opinion, should be and the same are hereby affirmed.

Interlocutory orders affirmed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.