266 So.2d 164 (1972)
INSURANCE COMPANY OF NORTH AMERICA, Appellant,
v.
Cecil A. WELCH, Administrator of the Estate of James Reed Welch, Deceased, and James H. Pruitt Agency, Inc., Appellees.
No. 71-680.
District Court of Appeal of Florida, Fourth District.
July 18, 1972.
Rehearings Denied September 19, 1972.
*165 Leonard N. D'Aiuto and Dale O. Morgan of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, Orlando, for appellant.
Sammy Cacciatore of Nance & Cacciatore, Melbourne, for appellees Cecil A. Welch, etc.
PER CURIAM.
Appellant-defendant, Insurance Company of North America (I.N.A., appeals a summary final judgment in favor of appellee-plaintiff, Cecil A. Welch, as Administrator of the Estate of James Reed Welch, deceased, and an order awarding plaintiff costs and attorneys' fees.
The summary final judgment was entered on June 25, 1971. The record reflects that no motion which would have tolled the running of the 30-day appeals period was filed. The order awarding plaintiff costs and attorneys' fees was entered on July 28, 1971. The notice of appeal was filed July 29, 1971.
It is apparent that the notice of appeal is timely only as to the order entered on July 28, 1971. F.A.R. 3.2(b), 32 F.S.A. Therefore, the appeal from the summary final judgment of June 25, 1971, being untimely is dismissed. Wabash Life Ins. Co. of Indianapolis v. Rosenberg, Fla.App. 1965, 177 So.2d 538.
*166 The appeal concerning the order awarding costs and attorneys' fees being timely presents a more complex problem. The instant action arose from the crash of an airplane which killed plaintiff Welch's decedent. The aircraft was owned by Marty's Flying Service, Inc., and was insured under a policy issued by I.N.A. to Marty's. Plaintiff instituted an action for damages against Marty's. I.N.A. denied coverage, and refused to defend the action. Marty's did not defend, and a judgment for damages was accordingly entered in favor of plaintiff against Marty's. Subsequently, Marty's assigned to plaintiff whatever cause of action it might have had against I.N.A. for failure to defend the original action, and for bad faith refusal to settle. Pursuant to this assignment, plaintiff brought the instant action against I.N.A. seeking damages for failure to defend and bad faith refusal to settle, and also seeking reformation of the insurance policy.
Prevailing in the trial court, plaintiff then sought an award of attorneys' fees under Section 627.0127, Florida Statutes 1969, F.S.A. At the hearing held to determine the amount of the attorneys' fees to which plaintiff was entitled, plaintiff's attorney testified that he had entered into a contingent fee contract with plaintiff, by which the attorney would receive one-third of any recovery obtained by plaintiff at trial. Plaintiff's expert witness testified that in his opinion a reasonable contingent fee would vary between thirty-three and one-third per cent and forty per cent, and that since the total recovery was some $52,000, a reasonable fee would run between $17,000 and $18,000. The trial court entered an order awarding attorneys' fees in the amount of $17,000 in favor of plaintiff and against I.N.A. Hence this appeal.
Initially, the record does not reflect whether the fees awarded to plaintiff included compensation for plaintiff's attorneys' efforts in the prior action against Marty's, as well as for the attorneys' services in the instant action. However, we consider it worthwhile to state unequivocally that plaintiff may be awarded fees against I.N.A. only as regards his attorneys' services in the instant action. This is so because the prior judgment against Marty's was not rendered "against an insurer." F.S. Section 627.0127, F.S.A., provides for the payment of attorneys' fees only upon the rendition of a judgment against an insurer.
The leading case concerning the propriety of awarding attorneys' fees against an insurer on the basis of a contingent fee contract between a plaintiff and his attorney is Travelers Insurance Co. v. Davis, 5 Cir.1969, 411 F.2d 244. Applying Florida law, the court there stated:
"The purpose of the Florida statute allowing recovery of attorney's fees by successful claimants under insurance policies is to discourage litigation over such policies and to reimburse successful plaintiffs reasonably for monies expended for attorney's fees in suits to enforce insurance contracts. American Fidelity & Casualty Co. v. Greyhound Corp., 258 F.2d 709 (5 Cir.1958); Feller v. Equitable Life Assurance Society of United States (Fla. 1952), 57 So.2d 581. Although an allowance thereunder may be considered as in the nature of a penalty, the general rule in states having such statutes is that the amount assessed should never be based on a contingent contract, such as might exist between a claimant and his attorney, but should represent only a reasonable fee for the services actually performed. 3 Appleman, Insurance Law and Practice § 1646 at 424. See, e.g., Metropolitan Life Insurance Co. v. Leach, 198 Ark. 531, 129 S.W.2d 588 (1939); Wolf v. Mutual Ben. Health & Acc. Ass'n, 188 Kan. 694, 366 P.2d 219 (1961); American Nat. Ins. Co. v. Valencia, 91 S.W.2d 832 (Tex.Civ.App. 1936). In analogous situations the Florida courts have consistently held that `a court is without power to measure an attorney's fee except on the basis of quantum meruit or a quid pro quo.' Brickell v. Di Pietro, 152 Fla. 429, 12 So.2d 782, *167 783 (1943). This rationale is clearly set forth in Ronlee, Inc. v. P.M. Walker Co. (Fla.App. 3rd Dist. 1961), 129 So.2d 175, 176:
"`The amount which a person may agree to pay as a contingent fee ordinarily is not a fair measure of the value of the legal services involved. This is true because, in the case of a contingent fee where nothing will be payable in the absence of recovery, the fee to be paid in the event of recovery usually is set higher than ... would be a flat fee for the services actually performed. Also, if a party to a contract such as the one involved in this case could require the defaulting party to pay any fee which the former might arrange with his attorney, he would be inclined to be liberal in contracting with his attorney.'
"Thus the amount to be awarded as attorney's fees under the Florida statute is to be determined not from the point of view of the lawyer and client, but from that of the presiding trial judge. The court may, of course, take into consideration the nature of the suit, the amount in controversy, any unusual features of the case, such as the lengthiness of a trial or the complexity of the evidentiary detail involved, New York Cent. Mut. Fire Ins. Co. v. Diaks, 69 So.2d 786 (Fla. 1954), and the contingency or certainty of the compensation, Penn-Florida Hotels Corp. v. Atlantic Nat. Bank, 126 Fla. 344, 170 So. 877, 880 (1936); F.L. Stitt & Co. v. Powell, 94 Fla. 550, 114 So. 375 (1927). In doing so, the court should assess only such amount as `public standards will approve for the work done, the time consumed, and the skill required.' Brickell v. Di Pietro, supra [12 So.2d] at 783. There must be a showing of need made for the services of all attorneys engaged by a party in order for such to fall within the statutory recognition."
In the instant case, the testimony adduced at the hearing was almost entirely devoted to the reasonableness of the contingent fee. The award of $17,000 was almost exactly thirty-three per cent of the total recovery by plaintiff. Under these circumstances, it seems clear that the award was based on the contingent fee contract between plaintiff and his attorney, rather than on the reasonableness of fees for services actually performed by the attorney.
Accordingly, the order of July 28, 1971, awarding attorneys' fees, is reversed and the cause remanded for further proceedings consistent with the views herein expressed. The appeal relating to the summary final judgment entered on June 25, 1971, being untimely, is dismissed.
CROSS, J., and DRIVER, B.J., Associate Judge, concur.
OWEN, J., dissents, with opinion.
OWEN, Judge (dissenting):
In my opinion, the "summary final judgment" entered June 25, 1971, was clearly interlocutory in nature rather than being the final judgment in this cause. That order or "judgment" expressly reserved jurisdiction for subsequent determination of an element of the plaintiff's claim, i.e., the claim for allowance of statutory attorneys' fees. It is quite clear that the judicial labor had not ended, which is the test of finality for purposes of appeal. See Kippy Corp. v. Colburn, Fla. 1965, 177 So.2d 193, and Blount v. Hansen, Fla.App. 1959, 116 So.2d 250.
There ought to be only one final judgment in a given case as between a particular plaintiff and a particular defendant. When a party moves for summary judgment under Rule 1.510, R.C.P., 31 F.S.A., and the court determines that some but not all of the issues may be determined summarily, that is, that judgment is not to be rendered upon the whole case or as to all of the relief sought by the pleadings, the procedure to be followed is set out in subparagraph (d) of Rule 1.510, R.C.P. An interlocutory order should be entered specifying *168 the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. At such time as the remaining issues have been determined, then and only then should a final judgment be entered whereby in one judgment disposition is made of all of the claims and demands between the parties. Liberman v. Rhyne, Fla.App. 1971, 248 So.2d 242; Brinkley v. Prudence Mutual Casualty Company, Fla. App. 1967, 199 So.2d 490; and Fontainebleau Hotel Corp. v. Young, Fla.App. 1964, 162 So.2d 303.
The instant case vividly points out the hazard, as well as the inherent evil, in having multiple "final" judgments between the same parties in a single case. According to the view of the majority, appellant should have filed a notice of appeal within 30 days of the order granting summary judgment on liability, and subsequently filed a separate notice of appeal within 30 days after entry of the order awarding attorneys' fees to the plaintiff. This is not a desirable result. When trial judges follow the teaching of the Fontainebleau case, supra, litigants or ther counsel are not placed in a quandary as to which "judgment" is final and which is only interlocutory in nature. More importantly, they would not find themselves "out of court" when they later discover that what they thought was only an interlocutory order is held to be the final appealable judgment.
The circumstances of this case are such that I would view the "final" judgment as being the order entered July 28, 1971, since it is the one which finally disposed of the last of the pending claims between plaintiff and appellant. This would make the notice of appeal filed July 29, 1971, timely as to the final judgment and give this court jurisdiction to review any interlocutory order appropriately assigned as error. It would thus be unnecessary to dismiss this appeal as untimely and would permit us to consider it on the merits. If considered on the merits, I would treat it exactly as we did the companion cases of Insurance Company of North America v. Ours et al., 266 So.2d 168, Cases No. 71-347, 348 and 349, respectively, decided this same date.